**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————

|  |  |  |
|---|---|---|
| Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Individually, and on behalf of all others similarly situated as Class Representatives, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Case No.: 7:19-cv-3460 |
| v. | : | |
| | : | CLASS AND COLLECTIVE |
| Three Diamond Diner Corp. d/b/a Mount Kisco Diner, Photios Georgiou a/k/a Frank Georgiou, Harry Georgiou, and Yiota Georgiou | : | ACTION |
| | : | |
| | : | |
| | : | JURY TRIAL REQUESTED |
| Defendants. | : | |
| ———————————————————— | : | |

<u>**COMPLAINT**</u>

**I.     PRELIMINARY STATEMENT**

1.     Plaintiffs Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia (collectively "Plaintiffs") were employed in various job capacities by Defendants at their upscale diner in Mount Kisco, New York.  They bring this Collective and Class Action on behalf of themselves and the scores of other individuals who currently work and/or previously worked in Defendants' restaurant business and were not paid their lawfully owed wages and were subjected to illegal discrimination based on their gender, race, ethnicity and/or national origin.

2.     During the course of Plaintiffs' employment, Defendants engaged in a veritable smorgasbord of legal violations.  Defendants failed to pay Plaintiffs their regular wages for all hours worked, failed to pay Plaintiffs an overtime premium on the frequent

occasions when they worked more than 40 hours in a week, cheated Plaintiffs out of tips, and "cooked the books" by falsifying records of how many hours employees worked and how much money they received.

3. Defendants created a hostile work environment for their predominantly Hispanic staff, routinely using racially derogatory language. Defendants also perpetrated and condoned rampant sexual harassment against female employees including Plaintiffs Julissa Morales and Aidee Geronimo-Romero.

## II.    JURISDICTION AND VENUE

4. Plaintiffs allege violations of the minimum wage and overtime provisions of the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the minimum wage, overtime, and hiring and wage notice provisions of New York Labor Law Article 19 § 650 *et seq.* ("NYLL").

5. Plaintiffs bring their FLSA claims individually and on behalf of other similarly situated current and former employees of Defendants under the collective action provisions of the FLSA, 29 U.S.C. § 216(b).

6. Plaintiffs bring their NYLL claims individually and on behalf of a class of persons pursuant to Rule 23(a), 23(b)(1) and (b)(3) of the Federal Rules of Civil Procedure.

7. Plaintiffs also allege violations of the provisions of 42 U.S.C. § 1981 ("Section 1981") and the New York State Human Rights Law ("HRL") prohibiting discrimination based on race, ethnicity, color and national origin and bring these claims individually and on behalf of a class of persons pursuant to Rule 23(a), 23(b)(1) and (b)(3) of the Federal Rules of Civil Procedure.

8. Plaintiffs Julissa Morales and Aidee Geronimo-Romero allege violations of the HRL

provisions prohibiting discrimination and harassment based on gender.

9.    This Court has subject matter jurisdiction pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*,

29 U.S.C. § 216 and 28 U.S.C. §§ 1331 and 1337.

10.   With respect to the state law claims, this Court has supplemental jurisdiction pursuant to

28 U.S.C. § 1367 in that the state law claims derive from a common nucleus of operative

fact and are so related to the federal claims that they form part of the same case or

controversy under Article III of the United States Constitution.

11.   Venue is appropriate in the Southern District of New York pursuant to 28 U.S.C.

§ 1391(b), as the events giving rise to this claim occurred primarily within this judicial

district.

### III.    THE PARTIES

12.   Plaintiff Julissa Morales is a Hispanic, adult individual and resident of the State of New

York, Westchester County.  Her written consent to be a party in this action is attached

hereto.

13.   Plaintiff Aidee Geronimo-Romero is a Hispanic, adult individual and resident of the State

of New York, Westchester County.  Her written consent to be a party in this action is

attached hereto.

14.   Plaintiff Ady Garcia is a Hispanic, adult individual and resident of the State of New York,

Westchester County.  Her written consent to be a party in this action is attached hereto.

15.   At all times relevant to this Complaint, Plaintiffs were employees of Defendants as that

term is defined by

a.  the FLSA, 29 U.S.C. § 203(e)(1), and

b.  the NYLL § 190, and

3

c.   the HRL, N.Y. Exec. Law § 292.

16.    At all times relevant to this Complaint, Plaintiffs were employees engaged in commerce or the production of goods for commerce, and/or were employees in an enterprise engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. § 203 *et seq*.

17.    Upon information and belief, Defendant Three Diamond Diner Corp. d/b/a Mount Kisco Diner (hereinafter "Mount Kisco Diner") is a domestic corporation doing business in the State of New York as a restaurant at 252 Main Street, Mount Kisco, NY 10549.

18.    Upon information and belief, Defendant Photios Georgiou a/k/a Frank Georgiou ("Frank Georgiou") is a resident of the State of New York.

19.    Upon information and belief, Frank Georgiou is an owner and chief executive officer of Mount Kisco Diner.

20.    At all times relevant to the Complaint, Frank Georgiou had the power, and did in fact exercise such power, to hire and fire Mount Kisco Diner employees, set employees' wages and work schedules, retain time and/or wage records, and otherwise control the terms and conditions of employment of all Mount Kisco Diner employees, including Plaintiffs.

21.    At all times relevant to the Complaint, Frank Georgiou had the power, and did in fact exercise such power, to create pay practices and policies for the corporate defendant.

22.    At all times relevant to the Complaint, Frank Georgiou had the power to stop any illegal pay practices at Mount Kisco Diner.

23.    At all times relevant to the Complaint, Frank Georgiou aided, abetted, incited, compelled, or coerced, acts forbidden under HRL in violation of N.Y. Exec. Law § 296(6).

24.     Upon information and belief, Defendant Harry Georgiou is a resident of the State of New York.

25.     Upon information and belief, Harry Georgiou is an owner and general manager of Mount Kisco Diner.

26.     At all times relevant to the Complaint, Harry Georgiou had the power, and did in fact exercise such power, to hire and fire Mount Kisco Diner employees, set employees' wages and work schedules, retain time and/or wage records, and otherwise control the terms and conditions of employment of all Mount Kisco Diner employees, including Plaintiffs.

27.     At all times relevant to the Complaint, Harry Georgiou had the power, and did in fact exercise such power, to create pay practices and policies for the corporate defendant.

28.     At all times relevant to the Complaint, Harry Georgiou had the power to stop any illegal pay practices at Mount Kisco Diner.

29.     At all times relevant to the Complaint, Harry Georgiou aided, abetted, incited, compelled, or coerced, acts forbidden under HRL in violation of N.Y. Exec. Law § 296(6).

30.     Upon information and belief, Defendant Yiota Georgiou is a resident of the State of New York.

31.     Upon information and belief, Yiota Georgiou is an owner of Mount Kisco Diner.

32.     At all times relevant to the Complaint, Yiota Georgiou had the power, and did in fact exercise such power, to hire and fire Mount Kisco Diner employees, set employees' wages and work schedules, retain time and/or wage records, and otherwise control the terms and conditions of employment of all Mount Kisco Diner employees, including Plaintiffs.

33.    At all times relevant to the Complaint, Yiota Georgiou had the power, and did in fact

       exercise such power, to create pay practices and policies for the corporate defendant.

34.    At all times relevant to the Complaint, Yiota Georgiou had the power to stop any illegal

       pay practices at Mount Kisco Diner.

35.    At all times relevant to the Complaint, Yiota Georgiou aided, abetted, incited, compelled,

       or coerced, acts forbidden under HRL in violation of N.Y. Exec. Law § 296(6).

36.    At all times relevant to the Complaint, the individual defendants actively managed,

       supervised, and directed the business affairs and operation of Mount Kisco Diner, and

       acted directly and indirectly in relation to its employees.

37.    At all times relevant to the Complaint, Mount Kisco Diner was an employer of each of

       the Plaintiffs as that term is defined by

       a.    the FLSA, 29 U.S.C. § 203(d),

       b.    NYLL § 190, and by

       c.    the HRL, N.Y. Exec. Law § 292.

38.    At all times relevant to the Complaint, Frank Georgiou was an employer of each of the

       Plaintiffs as that term is defined by

       a.    the FLSA, 29 U.S.C. § 203(d),

       b.    NYLL § 190, and by

       c.    the HRL, N.Y. Exec. Law § 292.

39.    At all times relevant to the Complaint, Harry Georgiou was an employer of each of the

       Plaintiffs as that term is defined by

       a.    the FLSA, 29 U.S.C. § 203(d),

       b.    NYLL § 190, and by

c.     the HRL, N.Y. Exec. Law § 292.

40.    At all times relevant to the Complaint, Yiota Georgiou was an employer of each of the

Plaintiffs as that term is defined by

a.     the FLSA, 29 U.S.C. § 203(d),

b.     NYLL § 190, and by

c.     the HRL, N.Y. Exec. Law § 292.

41.    Upon information and belief, Mount Kisco Diner grossed more than $500,000 per year in

revenue for each of the past five (5) calendar years.

42.    Upon information and belief, Mount Kisco Diner is an enterprise engaged in commerce.

## IV.    STATEMENT OF FACTS

43.    Defendants own and operate Mount Kisco Diner, which advertises itself as "an upscale

casual restaurant."

44.    At all times relevant to the Complaint, Defendants have employed approximately 70

employees at any given time as hostesses, bartenders, waiters, bussers, dishwashers,

cooks, bakers, and prep workers.

45.    Defendants never provided their employees, including Plaintiffs, with any written

statement, in English or Spanish, at the time of their hiring, setting out their rates of pay

and other information as required by the New York Labor Law.

46.    Defendants' employees, including Plaintiffs, routinely worked in excess of forty (40)

hours per week, i.e. "overtime hours," and over a spread of hours exceeding ten (10)

hours in a day.

47.    Defendants did not pay Plaintiffs and their other employees for all of their hours worked,

instead either underreporting the hours on their pay stubs and failing to pay them

anything whatsoever for certain hours or paying them a flat daily rate regardless of the number of hours worked.

48.    This system resulted in Plaintiffs frequently being paid significantly lower than Federal and State minimum wage.

49.    Defendants failed to pay Plaintiffs and their other employees at a rate of one and one half their regular hourly rate of pay for every hour worked over 40 in a workweek.

50.    Defendants did not provide Plaintiffs and their other employees, with any written wage statements accurately setting forth their total pay, the time period for which the pay was intended to compensate employees, the employees' hours during that time period, or the employees' rates of pay as required by NYLL.

51.    For employees who were paid at least partially by check, including Aidee Geronimo-Romero and Ady Garcia, Defendants provided written wage statements that falsely understated the total number of hours that employees worked and inaccurately reported the amount of cash tips they had been paid.

52.    For employees who were paid at least partially by check, including Aidee Geronimo-Romero and Ady Garcia, Defendants made illegal deductions from their paychecks for "tips" purportedly already paid to them in cash and "meals" purportedly consumed at the restaurant.

53.    However, the amount of tips that employees, including Aidee Geronimo-Romero and Ady Garcia, actually received in any given week did not correspond to the amount of tips that Defendants deducted from their paychecks.

54.    Defendants never explained to Plaintiffs how the cost of meals would be deducted from their pay.

55. Defendants calculated how much money customers left in tips and "cashed out" tips to waiters at the end of their shifts.  However, Defendants did not turn over all of the tips to the employees for whom they were intended, and instead routinely retained tips for themselves.

56. Defendants never explained to their employees, including Plaintiffs, that they would be claiming a "credit" from the minimum wage for tips,  how the amount of tips would impact Plaintiffs' pay from Defendants and that all tips received by an employee must be retained by that employee except for a valid tip pooling arrangement.

57. On all occasions when Plaintiffs worked more than ten (10) hours in a single day, Defendants failed to pay Plaintiffs for an additional hour of work as required by law.

58. Plaintiffs frequently did not receive an uninterrupted meal break of at least 20 minutes during their workday.

59. Plaintiffs were not free to leave the diner premises during their shifts, including during nominal "breaks," unless they sought special permission from Defendants.

60. Defendants required their employees, including Plaintiffs, to wear certain attire at work, including formal, color coordinated pants, shirts, shoes, belts and ties. Plaintiffs' workwear had to be dry cleaned or laundered separately from other clothing and then ironed.

61. Plaintiffs and Defendants' other employees were required to pay out-of-pocket for their work attire and were never reimbursed by Defendants.

62. Defendants never paid Plaintiffs any amount to cover the costs associated with laundering and caring for their workwear.

63. Defendants gave materially preferential treatment to their non-Hispanic employees, as

compared to their Hispanic employees.

64.    Plaintiffs' workplace was permeated with discriminatory intimidation, ridicule, and insult directed by Defendants to them and other employees of Hispanic heritage.  The discrimination was so pervasive as to adversely alter the conditions of their employment.

65.    Defendants routinely referred to their Hispanic employees, including Plaintiffs, with racially derogatory and demeaning language.  In particular, Defendant Harry Georgiou referred to Plaintiffs and other Hispanic employees as "mapaches" ("raccoons") and as "indios" ("Indians") who lacked education and worked like donkeys.

66.    Defendants did not permit Plaintiffs or other Hispanic employees to take time off when they were sick.  Defendant Harry Georgiou told them to come to work or they would be fired.  When an ill employee would then arrive at the diner to avoid losing their job, Defendant Harry Georgiou would mock them as "dirty pigs" and spray them with cleaning spray.

67.    Defendants would routinely prohibit Hispanic employees from taking even nominal breaks and refer to the person seeking a break as lazy, displaying "a Guatemalan mentality" that was "not like us."

68.    Defendant Frank Georgiou would frequently yell at Plaintiffs and other Hispanic employees for being "incompetent" when their work was even slightly imperfect, such as if they allowed the phone to ring multiple times before answering it or used two staples instead of one on a customer's receipt.

69.    Similarly, Defendant Yiota Georgiou would frequently yell at Plaintiffs and other female Hispanic employees for "inappropriate" work attire if she considered their clothing to be too tight or revealing, but said nothing to non-Hispanic female employees who dressed in

a similar fashion.

70.    The few non-Hispanic employees at the diner were treated markedly better by
Defendants.

71.    Upon information and belief, Defendants paid non-Hispanic employees higher wages
than their Hispanic counterparts in the same job categories, allowed non-Hispanic
employees to take meal breaks which were denied to their Hispanic counterparts in the
same job categories, and permitted non-Hispanic employees to take time off from work
when they were ill.

72.    Hispanic employees were routinely shunned, ostracized, and humiliated, both publicly
and privately by Defendants.

**JULISSA MORALES**

73.    Plaintiff Julissa Morales was employed by Defendants as a hostess from approximately
November 2017 to approximately November 2018.  Her typical job duties included
seating patrons, settling and closing customer bills, sweeping, minor cleaning and
maintaining a running tally of tips paid by customers.

74.    Plaintiff Julissa Morales was hired by Defendant Harry Georgiou, who told her that she
would be paid $10 per hour.

75.    Julissa Morales typically worked at the restaurant six days per week.

76.    During her first month of employment, Julissa Morales worked approximately 30 hours
per week.  Her hours increased to approximately 50 hours per week on or about
December 2017, and approximately 70 hours per week on or about January 2018 until the
end of her employment.

77.    On or about February 2018, Defendant Harry Georgiou increased Julissa Morales's rate

11

of pay to $12 per hour for weekend shifts.

78.    Upon information and belief, on occasions when Defendants unlawfully deducted monies

from Julisssa Morales' wages and/or caused Julissa Morales to incur unreimbursed work

expenses, as detailed above, Defendants failed to pay Julissa Morales the then applicable

Federal and New York state minimum wage.

79.    Defendants consistently failed pay Julissa Morales at a rate of one and one half her

regular hourly wage for each hour worked over 40 in a pay period.

80.    Defendants did not provide Julissa Morales with any written statement, at the time of her

hiring or at any time thereafter, explaining her rates and method of pay.

81.    Upon information and belief, Defendants maintained no written records of hostesses'

work hours.

82.    Defendant Harry Georgiou made repeated unwanted sexual advances toward Plaintiff

Julissa Morales throughout her employment.  Harry Georgiou was the general manager of

the diner and had control over every aspect of Julissa Morales's employment.  While she

tried to work, he made repeated suggestive comments about her appearance and ethnicity,

referring to her as a "very pretty Latina."

83.    On multiple occasions, Defendant Harry Georgiou sent Julissa Morales unwanted text

messages of a personal nature, including photos of himself shirtless and asking her if she

wanted his body and if she desired to be with him.

84.    Plaintiff Julissa Morales asked Harry Georgiou to stop or she would tell his parents,

Defendants Frank and Yiota Georgiou.  But Harry Georgiou's harassment of Julissa

Morales continued even after she confronted him.

85.    Whenever Julissa Morales spoke to a male customer or co-worker, Harry Georgiou would

12

appear and angrily send her to another part of the diner, then question her about why she was speaking to the other man.

86.    On one occasion, while Julissa Morales was working at the cash register, Harry Georgiou passed closely behind her and intentionally touched her posterior.

87.    Upon information and belief, Defendant Yiota Georgiou witnessed this incident but did nothing to stop Harry Georgiou, who continued to harass Julissa Morales.

**AIDEE GERONIMO-ROMERO**

88.    Aidee Geronimo-Romero was hired by Frank Georgiou in approximately August 2011 as a busser.  She worked at the diner in that capacity until approximately the summer of 2012.

89.    During this time, Aidee Geronimo-Romero typically worked from 11am until 9pm, five days per week, and from 8am until 5pm on Saturdays.  Defendants paid her $20 per workday, regardless of the number of hours she worked that day or that week.

90.    As a busser, Aidee Geronimo-Romero's job duties included clearing and cleaning tables, serving beverages, maintaining the stock of takeout containers, polishing silverware, maintaining the inventory of juices in the refrigerator, maintaining ice in the freezers, ensuring that ice cream was stocked, making "mega-milkshakes," preparing glassware for the dishwasher, cleaning bathrooms, mopping floors, cleaning windows, and taking out trash.

91.    One day in approximately the summer of 2012, Plaintiff Aidee Geronimo-Romero informed Defendant Frank Georgiou that she was resigning as of the end of the week. Frank Georgiou terminated Aidee Geronimo-Romero's employment that day.

92.    In approximately 2015, Defendant Yiota Georgiou re-hired Aidee Geronimo-Romero as a

busser.

93. During this time, Aidee Geronimo-Romero typically worked from 9am until 5pm, five days per week, and from 8am until 5pm on Saturdays.  Defendants paid her $25 per workday, regardless of the number of hours she worked that day or that week.

94. On occasions when Aidee Geronimo-Romero covered a shift for another busser, Defendants did not pay her at all.  This occurred on at least five occasions.

95. On or about the beginning of 2016, Aidee Geronimo-Romero began working as a hostess on Thursdays and Saturdays from 5pm to 10pm, in addition to continuing to work her previous schedule as a busser.

96. When Aidee Geronimo-Romero worked as a hostess, she was paid $10 per hour in cash. She was never paid a premium rate for hour worked over 40 in a work week and was never paid an additional hour at the then applicable New York State minimum wage for days when she worked 10 hours or more.

97. Defendant Harry Georgiou paid Aidee Geronimo-Romero weekly.

98. After several months, Aidee Geronimo-Romero stopped working as a busser and hostess and began working as a waitress.  She worked as a waitress throughout the rest of her employment.

99. For approximately four months, Aidee Geronimo-Romero "trained" in waitressing duties from 5pm until 8-9pm on one to three days per week, in most weeks.  Defendants did not pay Aidee Geronimo-Romero for the time she spent "training," during which she assisted the other waiters, tended tables, checked customers' orders, and served food.

100. As a waitress, Aidee Geronimo-Romero's job duties included taking customers' orders and generally attending to customers.  Depending on what "station" she was assigned to,

she was also responsible for certain "side work," including maintaining the shake station or salad dressing station, cutting lemons, and handling takeout orders.

101.    Defendants required that all such "side work" be completed before they would cash out an employee's credit card tips at the end of their shift.

102.    As a waitress, Aidee Geronimo-Romero's schedule varied, but she typically worked from 11am until 9pm, two days per week; and from 5pm until "close" three days per week. Working until "close" meant working until 12-12:30am on weekdays, and 1-1:30am on weekends.

103.    Aidee Geronimo-Romero and the other waiters and waitresses recorded their work hours by punching in and out of a timekeeping system at the beginning and end of their shifts, respectively.

104.    However, Defendants did not pay Aidee Geronimo-Romero for all of her work hours.

105.    Defendants falsely underreported Aidee Geronimo-Romero's work hours on the pay stubs she received along with her weekly payroll checks.

106.    As a waitress, Aidee Geronimo-Romero's reported regular rate of pay was $7.50 per hour, but she was paid less than that amount because she was not paid at all for certain hours worked and Defendants' falsely overstated the amount of cash tips purportedly paid to her.

107.    A co-worker sexually assaulted Plaintiff Aidee Geronimo-Romero at work, blocking the only exit in a room and forcibly touching her breasts.  She reported the incident to Defendant Harry Georgiou, who merely asked the perpetrator to apologize. Aidee Geronimo-Romero stated that she would call the police if a similar incident ever happened again.  Defendant Harry Georgiou responded, "How could you do that here?

You can't do that."

**ADY GARCIA**

108.   Ady Garcia was hired by Harry Georgiou on or about March 5, 2016.  She worked as a busser at the diner from that time until November 2018.

109.   As a busser, Ady Garcia's job duties included clearing and cleaning tables, serving beverages, maintaining the stock of takeout containers, polishing silverware, maintaining the inventory of juices in the refrigerator, maintaining ice in the freezers, ensuring that ice cream was stocked, making "mega-milkshakes," preparing glassware for the dishwasher, cleaning bathrooms, mopping floors, cleaning windows, and taking out trash.

110.   Defendants paid Ady Garcia $25 per workday throughout her employment, no matter how many hours she worked.

111.   From the beginning of her employment until on or about July 2017, Ady Garcia typically worked from 5pm until 1am on four days per week, and from 5pm until 2:30-3:00am on two days per week.

112.   From on or about July 2017 until the end of her employment, Ady Garcia typically worked from 11am-9pm on Tuesdays; 8am-4pm on Wednesdays, Thursdays, Saturdays, and Sundays; and from 8am-3pm on Fridays.

113.   At first, Defendants paid Ady Garcia entirely in cash.

114.   Starting in approximately December 2017, Defendants began paying Ady Garcia partially in cash and partially by payroll check.

115.   Defendants' payroll checks to Ady Garcia routinely indicated $336 in gross wages for the week, from which multiple deductions were taken.  Defendants supplemented the payroll check with $45 in cash each week.

16

116.    Defendants falsified information contained on the pay stubs that accompanied Ady

Garcia's payroll checks.  In particular, the pay stubs falsely indicated that Ady Garcia

worked only 21 hours each week and that Defendants were entitled to deductions for tips

and meals, and misreported the amount of tips she received.

**DEFENDANTS' CONDUCT TOWARD ALL PLAINTIFFS**

117.    Defendants were aware or should have been aware that applicable law required them to

pay employees such as Plaintiffs for all hours worked, and to pay employees such as

Plaintiffs premium pay for all hours worked in excess of forty (40) per week.

118.    Defendants knowingly paid employees, including Plaintiffs, for fewer hours than they

actually worked in a given workweek.

119.    Defendants knowingly overreported the amount of tips that employees, including

Plaintiffs, received, on their check stubs.

120.    Defendants knowingly deducted the inflated amount of tips from the wages they paid to

employees, including Plaintiffs.

121.    Defendants knowingly deducted the purported cost of meals from the wages they paid to

employees, including Plaintiffs, without providing written notice that meal deduction

allowances would be taken as part of the minimum wage and without properly

documenting the claimed meal credit.

122.    Defendants knowingly deducted money for "missed shifts."

123.    Upon information and belief, at all times during the period of Plaintiffs' employment by

Defendants, approximately 70 other individuals were simultaneously employed by

Defendants in similar capacities and were subject to the same nonpayment of lawful

wages in violation of Federal and State law as described in the preceding paragraphs.

The duration of employment for each individual varied. Plaintiffs estimate that, in total, at least 125 individuals were employed by Defendants in similar capacities at the same job sites and subject to the same pay, hiring notice and wage statement practices during the past six years.

## V. FLSA COLLECTIVE ACTION ALLEGATIONS

124. Plaintiffs Julissa Morales, Aidee Geronimo-Romero and Ady Garcia bring their FLSA minimum wage, overtime and illegal tip retention claims, the First, Second and Third Causes of Action, as a collective action under the collective action provision of the FLSA as set forth in 29 U.S.C. § 216(b) on behalf of themselves and the "FLSA Collective," defined as:

> All current and former non-managerial employees who worked for Defendants at the Mount Kisco Diner at any time within the three (3) years prior to the filing of this case and the date of final judgment in this matter.

125. The current and former employees described above are situated similarly to Plaintiffs within the meaning of 29 U.S.C. § 216(b) and, therefore, the First, Second and Third Causes of Action herein may be brought and maintained as an "opt-in" collective action.

126. Upon information and belief, the names, contact information, and dates of employment of the proposed FLSA Collective members are available from Defendants, and notice of and an opportunity to join this lawsuit should be provided to all potential opt-in Plaintiffs as soon as possible.

## VI. NYLL CLASS ACTION ALLEGATIONS

127. Plaintiffs Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia bring their NYLL claims, the Fourth through Ninth Causes of Action, as a class action under Rules 23(a), (b)(1), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and

"the NYLL Class," defined as:

> All current and former non-managerial employees who worked for Defendants at the Mount Kisco Diner at any time within the six (6) years prior to the filing of this case and the date of final judgment in this matter.

128.    The persons in the NYLL Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are approximately 125 members of the NYLL Class during the six years prior to the filing of this lawsuit.

129.    There are questions of law and fact common to the NYLL Class which predominate over any questions affecting only individual members, in that Class members worked in similar job capacities at a single restaurant and were subject to the same pay practices by Defendants.

130.    The claims of the named Plaintiffs are typical of the claims of the NYLL Class, as they worked in similar job capacities to the individuals they seek to represent, and were paid by Defendants in the same manner.

131.    The named Plaintiffs understand their responsibility to fairly and adequately protect the interests of the NYLL class and agree to do so.

132.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, which involves a substantial number of low-wage workers who lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

133.    The Defendants have acted or refused to act on grounds generally applicable to the NYLL Class.

134.    Questions of law and fact common to the collective and class action as a whole include, but are not limited to the following:

a.    Whether each of the Defendants is an employer under the FLSA and/or the NYLL;

b.    Whether Defendants unlawfully failed and continue to fail to pay minimum wage and overtime compensation in violation of FLSA;

c.    Whether Defendants' violations of the FLSA were willful;

d.    Whether Defendants unlawfully failed and continue to fail to pay minimum wage, overtime, and spread of hours compensation in violation of NYLL;

e.    Whether Defendants made unlawful deductions from Plaintiffs' wages in violation of FLSA and/or NYLL; and

f.    Whether Defendants failed to provide legally required hiring notices and wage statement notices, in violation of NYLL.

**VII.    SECTION 1981 and HRL CLASS ACTION ALLEGATIONS**

135.    Plaintiffs Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia bring their Section 1981 and HRL claims, the Tenth and Eleventh Causes of Action, as a class action under Rules 23(a), (b)(1), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and "the Section 1981-HRL Class," defined as:

> All current and former employees of Hispanic ethnicity who worked for Defendants at the Mount Kisco Diner at any time within the four (4) years prior to the filing of this case and the date of final judgment in this matter.

136.    The persons in the Section 1981-HRL Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole

control of Defendants, upon information and belief, there are approximately 125

members of the Section 1981-HRL Class during the three years prior to the filing of this

lawsuit.

137.    There are questions of law and fact common to the Section 1981-HRL Class which

predominate over any questions affecting only individual members, in that Class

members worked in similar job capacities at a single restaurant and were subject to the

same hostile work environment and adverse employment conditions perpetrated by

Defendants.

138.    The claims of the named Plaintiffs are typical of the claims of the Section 1981-HRL

Class, as they worked in the same work environment and under the same employment

conditions as the individuals they seek to represent.

139.    The named Plaintiffs understand their responsibility to fairly and adequately protect the

interests of the Section 1981-HRL class and agree to do so.

140.    A class action is superior to other available methods for the fair and efficient adjudication

of the controversy, which involves a substantial number of low-wage workers who lack

the financial resources to vigorously prosecute a lawsuit against corporate defendants.

141.    The Defendants have acted or refused to act on grounds generally applicable to the

Section 1981-HRL Class.

142.    Questions of law and fact common to the Section 1981-HRL class action as a whole

include, but are not limited to the following:

   a.    Whether each of the Defendants unlawfully discriminated against the Class on the

         basis of race and/or color;

   b.    Whether Defendants afforded preferential treatment and job conditions to non-

21

Hispanic employees, as opposed to employees of Hispanic ethnicity; and

c.     Whether Defendants created a hostile work environment for employees of
Hispanic ethnicity.

## VIII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Fair Labor Standards Act Minimum Wage Violations**
**On Behalf of Plaintiffs and the FLSA Collective**

143.   Plaintiffs Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia and any members of
the FLSA Collective who file consents to sue in this action restate, re-allege and
incorporate by reference all of the preceding allegations as if fully set forth herein.

144.   Defendants willfully failed to pay Julissa Morales, Aidee Geronimo-Romero and Ady
Garcia and members of the FLSA Collective at least the applicable federal minimum
wage for each hour worked, in violation of 29 U.S.C. § 206 *et seq*.

145.   Defendants made unlawful deductions from the wages of Julissa Morales, Aidee
Geronimo-Romero, and Ady Garcia and the members of the FLSA Collective.

146.   Due to Defendants' FLSA violations, Plaintiffs Julissa Morales, Aidee Geronimo-
Romero, and Ady Garcia and members of the FLSA Collective are entitled to recover
from Defendants, jointly and severally, their unpaid minimum wage compensation, an
additional equal amount as liquidated damages, reasonable attorneys' fees, and costs of
the action, pursuant to 29 U.S.C. § 216 (b).

### SECOND CAUSE OF ACTION

**Fair Labor Standards Act Overtime Wage Violations**
**On Behalf of Plaintiffs and the FLSA Collective**

147.   Plaintiffs Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia and any members of
the FLSA Collective who file consents to sue in this action restate, re-allege and

incorporate by reference all of the preceding allegations as if fully set forth herein.

148.    Defendants willfully failed to pay Plaintiffs and members of the FLSA Collective

overtime compensation at rates not less than one and one-half times the regular rate of

pay for each hour worked in excess of forty (40) hours in a workweek, in violation of 29

U.S.C. § 207 (a)(1).

149.    Defendants made unlawful deductions from Plaintiffs' wages and the wages of the

members of the FLSA Collective.

150.    Due to Defendants' FLSA violations, Plaintiffs and members of the FLSA Collective are

entitled to recover from Defendants, jointly and severally, their unpaid overtime

compensation, an additional equal amount as liquidated damages, reasonable attorneys'

fees, and costs of the action, pursuant to 29 U.S.C. § 216 (b).

### THIRD CAUSE OF ACTION
### Fair Labor Standards Act – Illegal Retention of Tips
### On Behalf of Plaintiffs and the FLSA Collective

151.    Plaintiffs Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia and any members of

the FLSA Collective who file consents to sue in this action restate, re-allege and

incorporate by reference all of the preceding allegations as if fully set forth herein.

152.    Defendants willfully and unlawfully retained tips left by customers, which were intended

as gratuities for Plaintiffs and members of the FLSA Collective.

153.    Due to Defendants' FLSA violations, Plaintiffs and members of the FLSA Collective are

entitled to (a) the difference between the cash wages paid by Defendants and the

applicable federal minimum wage, and (b) the return of their tips.

### FOURTH CAUSE OF ACTION
### New York Labor Law – Minimum Wage
### On Behalf of Plaintiffs and the NYLL Class

154.   Plaintiffs Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia, on behalf of the NYLL Class restate, re-allege and incorporate by reference all of the previous allegations as if fully set forth herein.

155.   Defendants willfully violated Plaintiffs' and NYLL Class members' rights by failing to pay them the applicable New York State minimum wage for each hour worked.

156.   Due to Defendants' New York Labor Law violations, Plaintiffs Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia and members of the NYLL Class members are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages, liquidated damages, reasonable attorneys' fees, costs of the action, and interest, pursuant to NYLL §§ 198, 663, and 681.

### FIFTH CAUSE OF ACTION

**New York Labor Law – Overtime Wage**
**On Behalf of Plaintiffs and the NYLL Class**

157.   Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia, on behalf of the NYLL Class restate, re-allege and incorporate by reference all of the previous allegations as if fully set forth herein.

158.   Defendants willfully violated Plaintiffs' and NYLL Class members' rights by failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

159.   Due to Defendants' New York Labor Law violations, Plaintiffs and members of the NYLL Class are entitled to recover from Defendants, jointly and severally, their unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, costs of the action, and interest, pursuant to NYLL §§ 198, 663, and 681.

### SIXTH CAUSE OF ACTION

24

**New York Labor Law – Spread of Hours**
**On Behalf of Plaintiffs and the NYLL Class**

160.   Plaintiffs Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia, on behalf of the

NYLL Class restate, re-allege and incorporate by reference all of the previous allegations

as if fully set forth herein.

161.   Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them

an additional hour of pay at the minimum wage rate for days on which their workday

spanned more than ten (10) hours or on which they worked split shifts.

162.   Due to Defendants' New York Labor Law violations, Plaintiffs and members of the

NYLL Class are entitled to recover from Defendants, jointly and severally, their unpaid

spread of hours compensation, liquidated damages, reasonable attorneys' fees, costs of

the action, and interest, pursuant to NYLL §§ 198, 663, and 681.

**SEVENTH CAUSE OF ACTION**

**New York Labor Law – Illegal Retention of Tips**
**On Behalf of Plaintiffs and the NYLL Class**

163.   Plaintiffs Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia, on behalf of the

NYLL Class restate, re-allege and incorporate by reference all of the previous allegations

as if fully set forth herein.

164.   Defendants willfully and unlawfully retained tips left by customers, which were intended

as gratuities for Plaintiffs and members of the NYLL Class in violation of NYLL 196-d.

165.   Due to Defendants' NYLL violations, Plaintiffs and members of the NYLL Class are

entitled to (a) the difference between the cash wages paid by Defendants and the

applicable New York State minimum wage for Westchester County, and (b) the return of

their tips.

25

## EIGHTH CAUSE OF ACTION

**New York Labor Law – Unlawful Deductions**
**On Behalf of Plaintiffs and the NYLL Class**

166.    Plaintiffs Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia, on behalf of the

NYLL Class restate, re-allege and incorporate by reference all of the previous allegations

as if fully set forth herein.

167.    Defendants willfully violated the rights of Plaintiffs and members of the NYLL Class by

deducting monies from their wages for a purpose which was not primarily for their

benefit and without their voluntary written authorization and without written notice of all

terms and conditions of the payment and/or its benefits, in violation of the NYLL § 193

and its regulations.

168.    Due to Defendants' New York Labor Law violations, Plaintiffs and members of the

NYLL Class are entitled to recover from Defendants, jointly and severally, their

unlawfully deducted wages, liquidated damages, reasonable attorneys' fees, costs of the

action, and interest, pursuant to NYLL §§ 198, 663, and 681.

## NINTH CAUSE OF ACTION

**New York Labor Law – Failure to Provide Hiring Notices and Wage Statements**
**On Behalf of Plaintiffs and the NYLL Class**

169.    Plaintiffs Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia, on behalf of the

NYLL Class restate, re-allege and incorporate by reference all of the previous allegations

as if fully set forth herein.

170.    Defendants failed to supply Plaintiffs and members of the NYLL Class a hiring notice as

required by NYLL § 195, in English or in any other language, containing all of the

following information: their rate or rates of pay and basis thereof, whether paid by the

26

hour, shift, day, week, salary, piece, commission, or other; their hourly rate or rates of pay and overtime rate or rates of pay; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer.

171.    Defendants failed to supply Plaintiffs and members of the NYLL Class with an accurate statement of wages as required by NYLL § 195, containing all of the following information: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay; the number of hours worked, including overtime hours worked; deductions; and net wages.

172.    Due to Defendants' NYLL violations, for each workweek that Defendants failed to provide a proper notice at the time of hiring from April 9, 2011 through February 26, 2015, Plaintiffs and members of the NYLL Class are each entitled to damages of $50 per day, up to a total of $2,500 per class member, as provided for by NYLL § 198, as well as reasonable attorneys' fees and costs.

173.    Due to Defendants' NYLL violations, for each day that Defendants failed to provide a proper notice at the time of hiring from February 26, 2015 through the present, Plaintiffs and members of the NYLL Class are entitled to damages of $50 per day, up to a total of $5,000 per class member, as provided for by NYLL § 198, as well as reasonable attorneys' fees and costs.

174.    Due to Defendants' NYLL violations, for each workweek that Defendants failed to

provide a proper wage statement from April 9, 2011 through February 26, 2015, Plaintiffs and members of the NYLL Class are each entitled to damages of $100 per day, up to a total of $2,500 per class member, as provided for by NYLL § 198, as well as reasonable attorneys' fees and costs.

175. Due to Defendants' NYLL violations, for each workweek that Defendants failed to provide a proper wage statement from February 26, 2015 through the present, Plaintiffs and members of the NYLL Class are each entitled to damages of $250 per day, or a total of $5,000 per class member, as provided for by NYLL § 198, as well as reasonable attorneys' fees and costs.

## TENTH CAUSE OF ACTION

### Section 1981 – Discrimination on Behalf of Plaintiffs and the Section 1981-HRL Class

176. Plaintiffs Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia, on behalf of the Section 1981-HRL Class restate, re-allege and incorporate by reference all of the previous allegations as if fully set forth herein.

177. By the actions set forth above, among others, Defendants have discriminated against the Plaintiffs in violation of Section 1981.

178. Defendants discriminated against Plaintiffs because of their Hispanic race and ethnicity and subjected them to a hostile work environment because of their Hispanic race and ethnicity.

179. As a result of Defendants' illegal actions, Plaintiffs have suffered, and continue to suffer, economic harm including loss of past and future income, mental anguish, and emotional distress for which they are entitled to damages.

28

180.    Defendants' actions were malicious, willful, and wanton violations of Section 1981 for which Plaintiffs are entitled to an award of punitive damages.

**ELEVENTH CAUSE OF ACTION**
**New York State Human Rights Law – Discrimination**
**On Behalf of Plaintiffs and the Section 1981-HRL Class**

181.    Plaintiffs Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia, on behalf of the HRL Class restate, re-allege and incorporate by reference all of the previous allegations as if fully set forth herein.

182.    By the actions set forth above, among others, Defendants have discriminated against the Plaintiffs in violation of the New York State Human Rights Law.

183.    Defendants discriminated against the Plaintiffs and subjected the Plaintiffs to a hostile work environment because of their race, ethnicity, national origin, and color.

184.    Defendants' actions were in direct violation of the New York State Human Rights Law, Executive Law § 290 et. seq. 71.

185.    As a result of Defendants' willful and illegal actions, Plaintiffs have suffered, and continue to suffer, economic harm including loss of past and future income, mental anguish, and emotional distress for which they are entitled to damages

**TWELFTH CAUSE OF ACTION**

**New York Human Rights Law – Discrimination and Sexual Harassment on Behalf of Plaintiffs Julissa Morales and Aidee Geronimo-Romero**

186.    Plaintiffs Julissa Morales and Aidee Geronimo-Romero re-allege and incorporate by reference all of the previous allegations as if fully set forth herein.

187.   Plaintiff Julissa Morales was subject to unwelcome sexual conduct by Defendant Harry Georgiou and her reaction to that conduct was then used as the basis for decisions affecting compensation, terms, conditions, or privileges of her employment.

188.   Plaintiffs Julissa Morales' and Aidee Geronimo-Romero" workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of their work environment, and Defendants are responsible for the conduct that created the hostile environment.

189.   Defendants' conduct constitutes illegal sexual harassment in violation of § 296 of the New York Human Rights Law.

190.   As a result of these illegal actions, Plaintiffs Julissa Morales and Aidee Geronimo-Romero have suffered, and continue to suffer, economic harm including loss of past and future income, mental anguish, and emotional distress for which they are entitled to damages

## IX.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

191.   Designate this action as a collective action on behalf of the proposed FLSA Collective pursuant to FLSA § 216(b) and order prompt issuance of notice to all similarly situated members of the FLSA Collective, apprising them of the pendency of this action and permitting them to assert timely FLSA claims by filing written consents;

192.   Toll the statute of limitations on the claims of all FLSA Collective members from the date of filing of this Complaint until the FLSA Collective has been provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt in as plaintiffs;

193.    Certify this case as a class action pursuant to Fed. R. Civ. Proc. 23(b)(1) and (3) and order prompt issuance of notice to all members of the NYLL and Section 1981-HRL Classes, apprising them of the pendency of this action and how it affects their rights;

194.    Designate Plaintiffs Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia as representatives of the NYLL and Section 1981-HRL Classes;

195.    Declare Defendants' conduct complained of herein to be in violation of Plaintiffs' rights under the FLSA;

196.    Declare Defendants' conduct complained of herein to be in violation of Plaintiffs' rights under NYLL;

197.    Declare that Defendants' violations of the FLSA and NYLL were willful;

198.    Order Defendants to pay to Plaintiffs and members of the FLSA Collective all wages owed under the FLSA;

199.    Order Defendants to pay to Plaintiffs and members of the NYLL Class all wages owed under the NYLL;

200.    Grant judgment to Plaintiffs on their New York Human Rights Law claims and award Plaintiffs appropriate damages and fines and penalties as provided for by statute;

201.    Grant judgment to Plaintiffs on their Section 1981 claims and award Plaintiffs appropriate damages and fines and penalties as provided for by statute

202.    Award Plaintiffs and members of the FLSA Collective liquidated damages, statutory damages, and any other damages to which they are entitled under the FLSA;

203.    Award Plaintiffs and members of the NYLL Class liquidated damages, statutory damages, and any other damages to which they are entitled under the NYLL;

204.    Award the named Plaintiffs additional appropriate compensation in recognition

for their service in representing and benefiting other workers in this litigation;

205.    Award Plaintiffs reasonable attorneys' fees, costs and interest; and

206.    Award Plaintiffs such other legal and equitable relief as the Court deems

appropriate.

## X.   REQUEST FOR TRIAL BY JURY

Plaintiffs respectfully request a trial by jury as to all claims to which they are entitled.


RESPECTFULLY SUBMITTED,


/s/ Robert McCreanor

Robert McCreanor, Esq.
Maureen Hussain, Esq.
Laura Revercomb, Esq.
Worker Justice Center of New York
9 Main Street
Kingston, NY 12401
(845) 331-6615
mhussain@wjcny.org
rmccreanor@wjcny.org
lrevercomn@wjcny.org


**ATTORNEYS FOR THE PLAINTIFFS**

Dated: April 18, 2019