

January 7, 2019

Hon. Vincent L. Briccetti, U.S.D.J.
United States Courthouse
300 Quarropas St.
White Plains, NY 10601

    **Re:    Morales et al. v. Three Diamond Diner Corp. et al., 7:19-cv-3460-VB**

Dear Judge Briccetti:

    I represent the Plaintiffs in this matter and write on behalf of Plaintiffs and Defendants' counsel, Lawrence Morrison. The parties have recently reached a settlement of Plaintiffs' claims against Defendants, which include claims brought under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*. We respectfully seek approval of the settlement agreement, attached hereto as Exhibit A, in accordance with *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015).

    Plaintiffs Julissa Morales, Aidee Geronimo-Romero, and Ady Garcia alleged in the Amended Complaint that they worked in various capacities at Defendants' restaurant, the Mount Kisco Diner, and were not properly paid minimum wage and overtime, as required under the FLSA, 29 U.S.C. §§ 206, 207, that the Defendants illegally retained tips, and that their employment was terminated in retaliation for their complaints to the owners about their pay practices. Plaintiffs also alleged violations of the New York Labor Law, including failure to pay minimum, overtime, and spread of hours pay, illegal retention of tips, unlawful deductions, hiring notice and wage statement violations, and retaliation, as well as unlawful discrimination, in violation of Title VII, Section 1981, and the New York State Human Rights Law (Dkt. 40). Plaintiffs Wilmer Sagastume, Neris Milla, Denis Acevedo, Pedro Monroy, Norbin Duarte, Fredy Duarte, Andres Almeida, and Nathalie Ruano-Reyes filed consents to sue in this action. Defendants deny all of the above allegations.

    This Court granted Plaintiffs' unopposed motion to conditionally certify a collective action pursuant to the FLSA (Dkt. 45), and extended Plaintiffs' time to issue notice to potential opt-in plaintiffs when the parties arranged for private mediation in December (Dkt. 51). The parties reached a settlement at the mediation on December 18.

 1187 Culver Rd
Rochester, NY 14609
(585) 325 3050

 9 Main Street
Kingston, NY 12401
(845) 331 6615

 245 Saw Mill River Road
Suite 106
Hawthorne, NY 10532

www.wjcny.org

Settlement of Plaintiffs' Claims Against Defendants

      Plaintiffs assert that they were all illegally underpaid, though the manner of their underpayment differed based on their job function and method of payment (whether "on the books" by payroll check, "off the books" in cash, or a combination of check and cash). Defendants' records reflect that servers, including several Plaintiffs, were paid less than the minimum wage rate, and less than the applicable overtime rate for hours over 40; they were paid nothing whatsoever for several hours of recorded time per week. Defendants assert that they were entitled to take a tip credit and that the uncompensated time consisted of meal breaks; Plaintiffs assert that Defendants were not entitled to claim a tip credit and that employees were not permitted to take uninterrupted meal breaks. Plaintiffs assert that Defendants paid hostesses at a "straight time" rate for all hours worked, even when those hours exceeded 40 in a week, and bussers a flat daily rate of $25 per day, even when working double shifts and more than 40 hours in a week; Defendants maintained no time records for these employees. Plaintiffs assert that Defendants never paid a spread of hours premium, though their workdays frequently exceeded 10 hours; that Defendants deducted amounts from their wages, purportedly for meals and "miscellaneous" purposes, without authorization; and that Defendants did not compensate them for the cost or maintenance of their work uniforms. With respect to the notice requirements of the NYLL, Defendants never issued hiring notices to any employee, and never issued pay stubs to any employee who was paid in cash; Plaintiffs assert that the pay stubs issued to employees paid on payroll fail to satisfy the statutory requirements because they underreport the number of hours worked by employees.

      In addition to the wage and hour claims, Plaintiffs assert that Defendants treated them markedly worse than non-Hispanic employees and that their conduct toward Plaintiffs created a hostile work environment. In November 2018, Defendants fired the three named plaintiffs. Plaintiffs maintain that their termination was in retaliation for their complaints to Defendants about their pay practices; Defendants assert that the firings were because the three women were "aggressive" and disrupted their business.

      Defendants vehemently dispute all the above allegations and contend that any wage and hour violations were technical and not willful. Counsel for both parties negotiated the attached settlement agreement at arms' length and with the assistance of an experienced mediator. Both parties believe that the negotiated settlement is in their best interest at this time, due to the inherent risk and cost of litigation as well as the availability of meaningful non-monetary relief through settlement.

      Of the total settlement amount of $900,000, $800,000 will be paid directly to Plaintiffs. This amount reflects a discounted amount of owed wages as estimated by Plaintiffs' recollections of their hours, illegal deductions as indicated on Defendants' payroll records, uniform maintenance pay and damages for notice violations as calculated by statute and regulation, liquidated damages, and damages for discrimination and retaliation. Under the settlement terms, Plaintiffs will receive two checks each: (1) one payment reflecting the amount allocated to owed wages, from which payroll deductions should be made, and for which Defendants should issue a W-2; and (2) a second, simultaneous payment reflecting other

damages, from which no deductions should be made and for which Defendants should issue a 1099.  The settlement agreement provides that if Defendants fail to make these payments, the case shall be restored to the court's docket for entry of judgment jointly and severally against all Defendants in the amount of $2,000,000 and all other appropriate enforcement.

In addition to paying Plaintiffs monetary compensation, Defendants agree to obtain anti-discrimination training for themselves and their staff, provide neutral job references for Plaintiffs, and allow Plaintiffs' counsel to inspect their books annually for a two-year period.  There is no confidentiality provision; Plaintiffs agree not to post information about the settlement on social media or contact the press, but remain free to discuss the case and settlement in all other contexts, and with the knowledge that their counsel will issue a press release.

<u>Attorney's Fees</u>

Of the total settlement amount of $900,000, $100,000 will be paid to Plaintiffs' counsel, the Worker Justice Center of New York (WJCNY):  $783 to reimburse WJCNY for costs of the litigation, and $99,217 as attorney's fees.  As a non-profit public interest law firm, WJCNY represents low-income clients without cost to the clients.  None of the settlement funds described above as being paid directly to Plaintiffs will later be paid to WJCNY.  In light of the hours worked by Plaintiffs' counsel and the average hourly rates for attorneys of similar experience practicing in the Southern District of New York, we believe the amount of attorneys' fees, which comprise approximately 11% of the total settlement amount, is both fair and reasonable.

For the reasons stated above, counsel for all parties respectfully requests that the Court approve the settlement agreement in this case.

Thank you for your consideration.

Respectfully submitted,

*/s/ Maureen Hussain*